# In the United States Court of Federal Claims

No. 04-1435 C

(E-Filed: August 1, 2008)

| | |
|---|---|
| _____ ) | |
| ) | |
| TERRY EASTER, ET AL.,                        ) | Motion for Judgment on the |
| ) | Pleadings Pursuant to RCFC |
| ) | 12(c); Facts Indistinguishable |
| Plaintiffs,             ) | from Facts in Adams II; No |
| ) | Change In Applicable |
| v.                                          ) | Substantive Law Since Adams |
| ) | II; Judgment as a Matter of Law |
| THE UNITED STATES,                          ) | Appropriate |
| ) | |
| Defendant.             ) | |
| ) | |
| _____ ) | |

Jules Bernstein, Washington, DC for plaintiffs.  Linda Lipsett, Washington, DC, and
Edgar James, Washington DC, of counsel.

Shalom Brilliant, Washington, DC, with whom were Gregory G. Katsas, Acting Assistant
Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director,
Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC,
for defendant.  Michael J. Dierbert and William P. Rayel, Commercial Litigation Branch,
Civil Division, Department of Justice, Washington, DC, of counsel.

## ORDER

I.      Background

        Plaintiffs in this action are employees of the United States of America (United
States or government or defendant), employed by the Bureau of Alcohol, Tobacco, and
Firearms (BATF), Bureau of Immigration and Customs Enforcement (ICE), and United
States Secret Service (USSS).  Complaint (Compl.) 1.  On September 10, 2004, plaintiffs
filed their Complaint in this court, "seek[ing] to recover from defendant back pay,

liquidated damages, interest, attorney's fees and costs pursuant to the Fair Labor
Standards Act of 1938 [(FLSA)], as amended, 29 U.S.C. [§§ 201-219]." Id. at 1-2.
Plaintiffs' primary allegation is that from 2001 until the date of the filing, defendant had
inappropriately labeled them as exempt employees under the FLSA and thereby withheld
from them "pay and benefits due . . . under the FLSA." Id. at 3.  Plaintiffs requested that
defendant be ordered "to conduct a full, complete and accurate accounting of all back
overtime, premium and other pay, leave, holiday and excused and other paid absence
compensation, and benefits, interest and liquidated damages . . . to plaintiffs . . . from
2001 . . . ." Id. at 6.

     In the parties' Joint Preliminary Status Report (J. Prelim. Status Rep.), filed on
December 23, 2004, plaintiffs and defendant stated that:

>    The parties believe there is a reasonable likelihood of settlement on the
>    issue of whether plaintiffs are exempt from the FLSA as well as a
>    likelihood that the amount of damages due each plaintiff can be resolved.
>    However, it is unlikely that parties will resolve through settlement whether
>    plaintiffs are entitled to be compensated for driving a Government owned
>    vehicle from home to work and work to home.

J. Prelim. Status Rep. 3 (emphasis added).  On May 23, 2005, the parties filed a
Stipulation of Partial Dismissal (Stipulation), which dismissed the suit "in accordance
with . . . the terms of the Partial Settlement Agreement signed on behalf of the parties on
May 20, 2005 . . . ." Stipulation 1.  The Stipulation did not dismiss "plaintiffs' FLSA
claims arising from time solely spent driving a Government vehicle between home and
work [(plaintiffs' driving claims)], which remain[ed] the subject of further litigation . . .
." Id. (emphasis added).

     On the same date that they filed their Complaint, September 10, 2004, see Compl.
1, plaintiffs also filed with the court a Notice of Related Cases (Not. of Related Cases),
stating that this case is "directly related to [Adams v. United States (Adams I), 65 Fed. Cl.
217 (2005)] . . . which [was] currently pending in the United States Court of Federal
Claims, the outcome of which is likely to call for a determination of the same or
substantially similar questions as are presented in the instant case." Not. of Related Cases
1 (emphasis added).  In Adams I, several thousand government employees brought
"overtime pay claims for time spent driving to and from work in government-issued
vehicles." Adams I, 65 Fed. Cl. at 219.  After the Court of Federal Claims determined
that these driving claims were non-compensable under the FLSA, id. at 241, the Adams I
plaintiffs appealed to the United States Court of Appeals for the Federal Circuit, Adams
v. United States (Adams II), 471 F.3d 1321 (Fed. Cir. 2006).  On March 1, 2006, this

court stayed plaintiffs' driving claims "pending resolution in the Court of Appeals for the Federal Circuit of [Adams II]." Order of March 1, 2006 1. On December 18, 2006, the Federal Circuit upheld the Court of Federal Claims decision in Adams I and held that, according to precedent set in Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998), "commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis." Adams II, 471 F.3d at 1327-28. The Federal Circuit found that the Adams II plaintiffs' driving claims were de minimis and were therefore properly denied. Id. at 1328. The Federal Circuit's decision in Bobo, that an employee's driving of an employer's vehicle to and from work was not compensable under the FLSA, Bobo, 136 F.3d at 1468, was based on the Portal-to-Portal Act, 29 U.S.C. § 254(a) (2008), a Congressionally-enacted exception to the FLSA,[1] see id. at 1467. The Adams II plaintiffs' petition for rehearing en banc was denied, Adams v. United States, 219 Fed. Appx. 993, 993 (Fed. Cir. 2007), as was their petition for a writ of certiorari, Adams v. United States, 128 S.Ct. 866 (2008).

On February 5, 2008, following the Supreme Court's denial of the Adams II plaintiffs' petition for writ of certiorari, this court ordered the parties to "file with the court a joint status report or, if the parties cannot agree, separate status reports addressing any reasons the stay should continue and describing proceedings needed to resolve the case." Order of February 5, 2008 1. In their Joint Status Report filed on

---

[1]The Portal-to-Portal Act, 29 U.S.C. § 254(a), was amended by the Employee Flexibility in Commuting Act of 1996, Adams v. United States (Adams I), 65 Fed. Cl. 217, 224 (2005), now states, in relevant part:

> [N]o employer shall be subject to any liability or punishment under the [FLSA] . . . [for] failure . . . to pay an employee minimum wages, or to pay an employee overtime compensation, for . . . (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities . . . . For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphases added).

3

February 26, 2008 (J. Status Rep.), the parties stated that they "anticipate[d] resolving the plaintiffs' [driving] claims . . . through dispositive motions."  J. Status Rep. 1.  The parties also stated that "Defendant believes . . . that these claims are controlled by [Adams II] . . . , and that, under this controlling precedent, plaintiffs' driving claims should be dismissed as a matter of law."  Id.

On March 3, 2008, the court issued an order lifting its stay of the litigation of plaintiffs' driving claims and setting up a telephonic status conference for March 20, 2008.  Order of March 3, 2008 1.  Following this status conference, which was rescheduled for March 27, 2008 due to a scheduling conflict, Order of March 5, 2008, the court ordered defendant to file its dispositive motion(s), if any, on or before April 4, 2008, Order of March 28, 2008 ¶ 1.  On April 3, 2008, defendant filed Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated (Defendant's Motion or Def.'s Mot.), requesting that the court dismiss plaintiffs' driving claims pursuant to Rule 12(c) of the Rules of the United States Court of Federal Claims (RCFC).  Def.'s Mot. 1.  Defendant contends that plaintiffs' driving claims are controlled by the precedent of Adams II and are therefore non-compensable as a matter of law.  Id. passim.  On June 13, 2008, plaintiffs filed Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated (Plaintiffs' Opposition or Pls.' Opp.), arguing that "for several reasons, including recent decisions of the . . . Supreme Court in Long Island Care At Home, Ltd. v. Coke [(Coke)], 127 S. Ct. 2339 (2007), . . . and National Cable & Telecommunications [Assoc.] v. Brand X Internet Services [(National Cable)], 545 U.S. 967 (2005) . . . , and distinguishing law and facts, defendant is not entitled to judgment on the pleadings." Pls.' Opp. 1.  Attached to Plaintiffs' Opposition were the Declaration of Steven A. Hudson (Hudson Declaration or Hudson Dec.) and the Declaration of Michael S. Morgan (Morgan Declaration or Morgan Dec.).  Pls.' Opp. Ex. 1 and 2.  On June 20, 2008, defendant filed Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated (Defendant's Reply or Def.'s Reply), in which defendant responded to Plaintiffs' Opposition and supported its initial request to dismiss plaintiffs' driving claims as non-compensable as a matter of law, based upon the controlling precedent of Adams II. Def.'s Reply passim.  The court held oral argument on July 10, 2008, and, pursuant to the parties' presentations at oral argument, the court ordered additional briefing from the parties.  See Order of July 10, 2008.  On July 18, 2008, plaintiffs filed Plaintiffs' Memorandum Regarding AARP v. EEOC and Its Relevance to the Court's Determination of Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining

4

to be Adjudicated (Plaintiffs' Memorandum or Pls.' Memo.).[2]  On July 25, 2008, defendant filed Defendant's Response to Plaintiffs' Memorandum Regarding <u>AARP v. EEOC</u> and Its Relevance to the Court's Determination of Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated (Defendant's Memorandum or Def.'s Memo.).

II.     Discussion

      A.     Standard for Rules of the United States Court of Federal Claims (RCFC) 12(c) Judgment on the Pleadings

RCFC 12(c) permits a party to seek judgment based on a complainant's pleadings. RCFC 12(c).  The rule states:

> After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

<u>Id.</u>  "A motion for judgment on the pleadings should be denied unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim."  <u>Branning v. United States</u>, 215 Ct. Cl. 949, 950 (1977) (citations omitted).  "[R]egardless of whether the trial court is convinced that the plaintiff is unlikely to prevail at trial, the court should only grant a defendant's motion for judgment on the pleadings if the defendant is clearly entitled to judgment on the basis of the facts as the plaintiff has presented them."  <u>Owen v. United States</u>, 851 F.2d 1404, 1407 (Fed. Cir. 1988).  "[E]ach of the well-pled allegations in the complaint[] is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs."  <u>Atlas Corp. v. United States</u>, 895 F.2d 745, 749 (Fed. Cir. 1990).  The court

---

[2]On July 31, 2008, plaintiffs filed Plaintiffs' Motion for Leave to File Supplemental Authority and Supplemental Authority (Plaintiffs' Supplement or Pls.' Supp.).  In Plaintiffs' Supplement, plaintiffs argue that the Supreme Court's decision in <u>IBP, Inc. v. Alvarez</u> (<u>Alvarez</u>), 546 U.S. 21 (2005) is persuasive support for its claim that plaintiffs' driving time to and from work is compensable.  The court is not persuaded by plaintiffs' argument regarding <u>Alvarez</u>, and the outcome of this Order is unaffected by Plaintiffs' Supplement.

does not accept, however, "assertions in the pleadings that amount to legal conclusions." J.M. Huber Corp. v. United States, 27 Fed. Cl. 659, 661 (1993).

"Pursuant to RCFC 12(c), the trial court may convert a motion to dismiss into a motion for summary judgment under RCFC 56 if it relies on evidence outside the pleadings." Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355 (Fed. Cir. 2002); see also RCFC 12(c). "Conversion of a motion for judgment on the pleadings into one for summary judgment should only occur after the parties have been offered a 'reasonable opportunity' to present pertinent summary judgment materials." Rubert-Torres ex rel. Cintron-Rupert v. Hospital San Pablo, Inc. (Rubert-Torres), 205 F.3d 472, 475 (1st Cir. 2000) (quoting Federal Rules of Civil Procedure (FRCP) 12(c)).[3] Conversion is typically disfavored when (1) the motion for judgment on the pleadings is filed shortly after the complaint; (2) the party not submitting evidence is limited in its ability to do so because of a lack of discovery; "or (3) the nonmovant does not have reasonable notice that a conversion might occur." Id. A party is on constructive notice that a conversion might occur when it has submitted evidence itself, thereby inviting conversion. Id.

Here, matters outside the pleadings have been presented to the court by plaintiffs in Plaintiffs' Opposition in the form of declarations by plaintiffs Steven A. Hudson and Michael S. Morgan. See Pls.' Opp. Ex. 1 and 2. None of the concerns articulated by the First Circuit in Rubert-Torres is present. See Rubert-Torres, 205 F.3d at 475. Defendant's Motion was filed on April 3, 2008, Def.'s Mot. 1, nearly three and half years after plaintiffs had filed their Complaint on September 10, 2004, Compl. 1. Further, the parties have already engaged in discovery. See Order of March 28, 2008 ¶ 2. Finally, plaintiffs, the nonmovants, themselves submitted evidence outside of the pleadings. See Pls.' Opp. Ex. 1 and 2. Accordingly, the court will treat defendant's Motion as a motion for summary judgment pursuant to RCFC 56. See RCFC 12(c); RCFC 56.

RCFC 56 provides that summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.

---

[3]The Rules of the United States Court of Federal Claims (RCFC) generally mirror the Federal Rules of Civil Procedure (FRCP). RCFC 12 Rules Committee Notes (discussing changes made to "more closely parallel FRCP 12"); RCFC 56 Rules Committee Notes ("The subdivision structure of RCFC 56 was reordered to more closely conform to FRCP 56."). Therefore, this court relies on cases interpreting FRCP 12 and FRCP 56, as well as those interpreting RCFC 12 and RCFC 56.

1993).  A fact is material if it might significantly affect the outcome of the suit under governing law.  See Anderson, 477 U.S. at 248.  Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment.  Id.  Any doubts about factual issues are resolved in favor of the party opposing summary judgment, Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 163 (Fed. Cir. 1985), to whom the benefits of all favorable inferences and presumptions run, see H.F. Allen Orchards v. United States, 749 F.2d 1571, 1574 (Fed. Cir. 1984), cert. denied, 474 U.S. 818 (1985).


      B.      Controlling Precedent Exists for This Case

      In Defendant's Motion, defendant argues that "according to binding precedent [Adams II] . . . , plaintiffs are not entitled to compensation under the FLSA for time spent solely driving between home and work in a Government vehicle."  Def.'s Mot. 5. Plaintiffs respond that Adams II is not controlling because the decision of the Federal Circuit was incorrect, is no longer valid, or is distinguishable from this case.  Pls.' Opp. passim.  For the following reasons, the court fails to find merit in any of plaintiffs' arguments, and therefore finds that Adams II is applicable to this case and binding upon this court.

      The term "precedent" is defined by Black's Law Dictionary as "[a] decided case that furnishes a basis for determining later cases involving similar facts or issues." Black's Law Dict. 1214 (8th ed. 2004).  "Binding precedent" is defined as "a precedent that a court must follow."  Id. at 1215.  The precedent of the Supreme Court and the Federal Circuit is binding upon the United States Court of Federal Claims.  See Coltec Indus. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court [the United States Court of Appeals for the Federal Circuit], and our predecessor court, the Court of Claims." (citations omitted)).  This binding precedent includes the manner in which the Supreme Court and the Federal Circuit interpret various Congressional and administrative statutes.  Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256, 261-62 (2008) ("The United States Court of Appeals for the Federal Circuit has ruled that this court must not engage in a de novo interpretation of statutes . . . ; rather, it should carefully follow the binding precedent in this circuit as to the meaning of . . . relevant statutory terms." (citation omitted)).  Accordingly, this court is bound to follow the statutory interpretations of the Supreme Court and the Federal Circuit, even if this court, on its own, would not interpret the statute in the same manner.  See Crowley v. United States, 398 F.3d 1329, 1335 (Fed Cir 2005) (holding:

> [T]he Court of Federal Claims may not deviate from the precedent of the
> United States Court of Appeals for the Federal Circuit any more than the
> Federal Circuit can deviate from the precedent of the United States
> Supreme Court. Trial courts are not free to make the law anew simply
> because they disagree with the precedential and authoritative analysis of a
> reviewing appellate court).[4]

Therefore, unless the facts of this case are distinguishable from the facts in Adams II, or
there has been a change in the applicable law, the Federal Circuit's interpretation of the
FLSA and the exception to it created by the Portal-to-Portal Act, as stated in Bobo and
Adams II, control this case.

1.      The Scope of the Contested Facts

As an initial matter, the court considers the scope of the issues remaining in the
case after the parties filed their Stipulation of Partial Dismissal on May 23, 2005. That
agreement provided that the parties had dismissed all claims other than "plaintiffs' FLSA
claims arising from time solely spent driving a Government vehicle between home and
work." Stipulation 1 (emphasis added). In the court's view, the plain meaning of that
statement is that the plaintiffs had reserved claims arising only out of time spent driving,
Stipulation 1 ("time solely spent driving"), rather than, for example, activities carried out
before and/or after driving. Therefore, the court will review only the facts related to the
time when the plaintiffs are in their government-issued vehicles, driving to and from
work. All other claims, including claims that might arise out of activities alleged to have
been carried out for the employer's benefit before driving or after driving, have been
previously settled and are therefore not taken into account in this case. See id.

---

[4]For example, in Southern California Edison Co. v. United States (So. Cal. Edison),
38 Fed. Cl. 54 (1997), the Court of Federal Claims held that it was not the proper forum to
reexamine a jurisdictional issue relating to third party defendants that the Federal Circuit had
already ruled upon. 38 Fed. Cl. at 62. That court stated:

> The third-party defendants urge the court to reexamine this issue. However, this
> is not the proper forum for that purpose. If the issue does warrant a second look,
> that is a reexamination only the court of appeals may undertake. So far as this
> court is concerned, it must accept the [Federal Circuit] decision as controlling
> precedent . . . .

Id.

Employees' claims for compensation for time spent driving to and from work were the only claims at issue in the <u>Adams</u> litigation.  See <u>Adams I</u>, 65 Fed. Cl. at 231 ("The <u>only type of claim</u> addressed in defendant's 2002 motion <u>is commuting time claims while driving a government vehicle to and from work</u> . . . ." (emphases added)); <u>id.</u> at 240 ("The <u>only type of claim</u> addressed in defendant's 2004 motion <u>is commuting time claims for 'time solely spent driving' a government vehicle to and from work</u> . . . ." (emphases added) (citations omitted)).  Because the only claims not settled prior to litigation, both here and in <u>Adams</u>, are those related to "time solely spent driving" a government vehicle to and from work, the court finds only the facts directly related to the plaintiffs' "commuting time" or "driving time" to be relevant to this decision.

2.      The Facts of this Case are Indistinguishable From the Facts of <u>Adams II</u>

Plaintiffs argue that, based upon "distinguishing law and facts, defendant is not entitled to judgment on the pleadings."  Pls.' Opp. 1.  However, plaintiffs do not attempt to distinguish the facts in this case from the facts in <u>Adams II</u> or <u>Bobo</u> within their Opposition.  See Pls.' Opp. <u>passim</u>.  Instead, plaintiffs direct the attention of the court to the Hudson Declaration and the Morgan Declaration to discern for itself the factual differences.  See <u>id.</u> at 1-2 ("[S]ee the declarations of plaintiffs Steven A. Hudson and Michael S. Morgan . . . , which address, <u>inter alia</u>, the specific duties of their positions.").  The Hudson Declaration states that Steven Hudson has been "employed as a Technical Enforcement Officer, GS-1801 ("TEO") by the United States Immigration and Customs Enforcement ("ICE") . . . since 2004.  Prior to that [he] was employed as a TEO by the United States Customs Service ("USCS") since at least 2001."  Hudson Dec. 1.  Hudson further declares that

> ICE and USCS have provided me with vehicles which I use for the purposes of performing my work as a TEO.  My position requires that I drive my vehicle to many work locations and I have been required by ICE and USCS to transport the equipment that I use in performing my work in the rear compartment of my vehicle. . . .  Because of the nature of my work, including being required to be available for service on behalf of ICE and USCS at all times, I have been required to transport my vehicle to my home each working day from whatever location I may be at when I conclude my operational duties.[5]

---

[5]Hudson goes on to state:

Upon returning home I have been required by ICE and USCS to remove my government-issued firearms and ammunition from my vehicle and store them

(continued...)

Hudson Dec. 2 (footnote added).  Hudson also states that he is "prohibited from using [his] vehicle for personal purposes" and that "[w]hile driving [his] vehicle [he] is required to . . . monitor [its] radio."  Id.[6]

The Morgan Declaration states that Michael Morgan is "employed as an Explosives Enforcement Officer, GS-1801 ("EEO") by [BATF], and [has] been employed in that capacity at varying grade levels since at least 2001."  Morgan Dec. 1.  Morgan also declares that

> [BATF] provides me with a pickup truck ("truck") which I use for purposes
> of performing my work as an EEO.  My position requires that I drive my
> truck to many work locations and I am required by the Bureau to transport
> the equipment that I use in performing my work in the rear compartment of
> my truck . . . This equipment is stored in my truck and often exceeds 1000
> pounds in weight.  Because of the nature of my work, including being

---

[5](...continued)
securely in my home.  In the case of firearms, ICE and USCS have required that they be stored in a locked receptacle or safe overnight.  The process of removing these items from my vehicle, carrying them into my home and storing them takes approximately 10 minutes each day.  The process of removing them from storage and placing them in my vehicle at the commencement of each workday takes approximately 10 minutes each day.

Declaration of Steven A. Hudson (Hudson Declaration or Hudson Dec.) 2.  However, these allegations are irrelevant in light of the fact that the parties' Stipulation of Partial Dismissal (Stipulation) stated that their Partial Settlement Agreement had settled all claims other than "claims arising from time solely spent driving a Government vehicle between home and work."  Stipulation 1 (emphasis added).

[6]The statements contained in the Hudson Declaration are the full extent of the facts presented to the court with respect to his driving claim.  Nothing in the attached Technical Enforcement Officer (TEO) Position Description or in Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated (Plaintiffs' Opposition or Pls.' Opp.) elucidates what actually occurs during Hudson's commute, including what Hudson needs to do to monitor the vehicle's radio.  See Hudson Dec. 5-12; Pls.' Opp. passim.  However, because plaintiffs are opposing Defendant's Motion for Judgment on the Pleadings, Dismissing the Claims Remaining to be Adjudicated (Defendant's Motion or Def.'s Mot.), any doubts about factual issues are made in their favor, see Litton Indus. Prods., Inc. v. Solid State Sys. Corp., 755 F.2d 158, 163 (Fed. Cir. 1985), and the court will assume that Hudson is required to have the radio on at all times and be available to respond to any requests made of him by his employer.

available for service on behalf of [BATF] at all times, I am required to transport my truck to my home from whatever location I may be at when I conclude my operational duties.

Morgan Dec. 2.  Morgan goes on to state:

> Upon returning home I am required by [BATF] to remove my [BATF] issued firearm and computer from my truck and store them securely in my home.  In the case of my firearm, [BATF] requires that it be stored in a pistol lock box.  The process of removing these items from my truck, carrying them into my home and storing them takes approximately 5-10 minutes each day.  The process of removing them from storage and placing them in my truck at the commencement of each workday takes approximately 5-10 minutes each day.

Morgan Dec. 2.  However, these allegations are irrelevant in light of the fact that the parties Stipulation stated that their Partial Settlement Agreement had settled all claims other than "claims arising from <u>time solely spent driving</u> a Government vehicle <u>between home and work</u>."  Stipulation 1.  Like Hudson, Morgan is also "prohibited from using [his] truck for personal purposes.  [It] may be used only in connection with, and in support of, [his] work for [BATF]."  <u>Id.</u>  Finally, "[w]hile driving [his] truck[,] [Morgan] remain[s] in phone contact with [BATF]."  <u>Id.</u>[7]

Based upon the Hudson Declaration and the Morgan Declaration, it appears to the court that the facts in this case are that plaintiffs, as government employees, are required to drive government vehicles, containing government equipment, to and from work every day.  Hudson Dec. 1-2; Morgan Dec. 1-2.  While driving their vehicles to and from work, plaintiffs are not permitted to make any personal stops, or use the vehicles for "personal purposes."  Hudson Dec. 2; Morgan Dec. 2.  In addition, Hudson is required to monitor his radio and Morgan is required to remain in phone contact with his employer at all times while driving to and from work.  Hudson Dec. 2; Morgan Dec. 2.

---

[7]The statements contained in the Morgan Declaration are the full extent of the facts presented to the court with respect to his driving claim.  Nothing in the attached Explosives Enforcement Officer (EEO) Position Description or in Plaintiffs' Opposition elucidates what actually occurs during Morgan's commute, including what Morgan means when he says he is required to "remain in phone contact with [BATF]."  <u>See</u> Morgan Dec. 2, 5-9; Pls.' Opp. <u>passim</u>.  However, because plaintiffs are opposing Defendant's Motion, any doubts about factual issues are made in their favor, <u>Litton Indus. Prods., Inc.</u>, 755 F.2d at 163, and the court will assume that Morgan is in contact with BATF at all times during his commute.

11

In <u>Adams II</u>, the Federal Circuit described the facts of that case as follows:

> The plaintiffs are issued <u>government-owned police vehicles</u> and required as a condition of their employment <u>to commute from home to work in those vehicles</u>.  This requirement facilitates their employers' law enforcement missions, since the cars will be available to the officers for rapid response to emergency calls at any time . . . .  The officers' time is not entirely their own during their commutes:  <u>they are required to have their weapons and other law enforcement-related equipment and to have on and monitor their vehicles' communication equipment.  They are not allowed to run any personal errands in their government vehicles</u>, so their commute must proceed directly from home to work and back again without any unauthorized detours or stops.

<u>Adams II</u>, 471 F.3d at 1323 (emphases added).  Like the plaintiffs in this case, the plaintiffs in <u>Adams II</u> were also required to transport equipment and to maintain contact with their employers and were prohibited from making any personal stops while commuting.  <u>See id.</u>  The court fails to see any factual differences between this case and <u>Adams II</u> such that <u>Adams II</u> would not be controlling precedent governing the outcome of plaintiffs' driving claims.

        3.       Distinguishable Facts from Another Federal Circuit do not Trump Controlling Precedent

While plaintiffs do not attempt to distinguish <u>Adams II</u> or <u>Bobo</u> from this case, <u>see</u> Pls.' Opp. <u>passim</u>, they do attempt to distinguish this case from <u>Singh v. City of New York</u>, 524 F.3d 361 (2d Cir. 2008), a recent decision by the Court of Appeals for the Second Circuit, <u>id.</u> at 7-9.  In <u>Singh</u>, the city of New York required its fire alarm inspectors (the inspectors) to carry necessary inspection files to and from work with them every day.  <u>Singh</u>, 524 F.3d at 365.  The documents were kept in a briefcase and weighed fifteen to twenty pounds.  <u>Id.</u>  The inspectors asserted that "carrying and keeping safe [those] inspection files affect[ed] their commutes in various ways and that they should therefore be compensated for their time and effort."  <u>Id.</u>  For example, two plaintiffs testified that "carrying documents caused them occasionally to miss a bus or train," <u>id.</u>, another plaintiff testified that "the briefcase slowed his commute by 'give or take' ten minutes," <u>id.</u>, and still other plaintiffs testified "that keeping the documents safe after work hours was inconvenient, preventing them from attending social events because they had to go directly home in order to ensure the safety of their documents," <u>id.</u>

The Second Circuit held that the inspectors did not need to be compensated pursuant to the FLSA for time spent commuting to and from work, even though they were required to carry and keep safe inspection documents during those times. Id. at 364. In reaching this decision, the Second Circuit examined (1) if the carrying of the briefcase constituted "work" under the FLSA, and (2) whether it was an "integral and indispensable part of their inspecting duties." Id. at 367. The Second Circuit based its determination of whether the inspector's expenditure of time on their commute was work upon an analysis of "whether that time [was] spent predominantly for the benefit of the employer or the employee." Id. at 368. The Second Circuit found that "[w]hether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered." Id. Therefore, "[w]hile the City certainly benefits from the plaintiffs' carrying these [inspection documents], it cannot be said that the City is the predominant beneficiary of [the commuting] time." Id. at 368-69. For this reason, the Second Circuit held that "under the circumstances presented in this case, the carrying of a briefcase during a commute without any other employment-related activity does not transform the entire commute into work for purposes of the FLSA." Id. at 370.

Plaintiffs submit that the Second Circuit's analysis that the inspectors reaped the predominant benefit of the commuting time in the circumstances of that case "distinguishes [this] case from Singh, and . . . places the plaintiffs' driving in the category of FLSA compensable work." Pls.' Opp. 8. Plaintiffs contend that they "can demonstrate that their driving has been controlled and directed by defendant and has been engaged in exclusively for its benefit." Id. (emphasis added). Indeed, plaintiffs allege that their driving is controlled and directed by defendant, see Morgan Dec. 1-2; Hudson Dec. 1-2, however, identical findings were made in Adams II and Bobo, both holding plaintiffs' driving to be non-compensable work despite the fact that it was controlled and directed by their employers and done for their employer's benefit, see Adams II, 471 F.3d at 1328 ("Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis. That is the case here."); Bobo, 136 F.3d at 1468 ("[W]e accept as true that the restrictions placed upon the INS Agents' commutes are compulsory, for the benefit of the INS, and closely related to the INS Agents' principal work activities.").

While the law of the Federal Circuit is binding upon this court, "decisions of other federal appellate courts, while 'afforded great weight,' are not binding on the . . . Court of Federal Claims." Taylor v. United States, 73 Fed. Cl. 532, 541 n.18 (2006) (quoting Bankers Trust N.Y. Corp. v. United States, 225 F.3d 1368, 1371 (Fed. Cir. 2000)). Therefore, even if the facts underlying the Second Circuit's decision in Singh are distinguishable from this case, that circumstance does not govern the disposition of plaintiffs' driving claims in this case. Because plaintiffs' driving claims are substantially

13

factually identical to the claims in <u>Adams</u> and <u>Bobo</u>, they are controlled by Federal Circuit precedent.

    4.    There Has Been No Change in the Applicable Law Since the Federal Circuit's Decision in <u>Adams II</u>

Plaintiffs also argue that the Federal Circuit's decision in <u>Adams II</u> is not controlling in this case because "the reasoning in <u>Adams [II]</u> has been nullified by the Supreme Court's decisions in <u>Coke</u> and <u>National Cable</u>."  Pls.' Opp. 2.  It is plaintiffs' contention that these two Supreme Court decisions have altered the "law applicable to 'time worked' under the FLSA . . . since <u>Adams[II]</u>," <u>id.</u>, thereby vitiating the precedential value of <u>Adams II</u>.  However, <u>National Cable</u> was decided prior to <u>Adams II</u> and neither case dealt with the question of whether time spent driving between home and work constitutes compensable hours under the FLSA.  See <u>National Cable</u>, 545 U.S. <u>passim</u>; <u>Coke</u>, 127 S. Ct. <u>passim</u>.

    a.    The Supreme Court's Decision in <u>Coke</u> Did Not Change the Applicable Substantive Law for "Time Worked" Under the FLSA

The question of whether driving was compensable as "time worked" under the FLSA was not the question before the Court in <u>Coke</u>.  The question before the Court in <u>Coke</u> was whether a Department of Labor (DOL) regulation governing an FLSA exemption for home health care workers was valid and binding "in light of [its] text and history, and a different (apparently conflicting) [DOL] regulation." <u>Coke</u>, 127 S. Ct. at 2344 (citing <u>Chevron, U.S.A., Inc. v. NRDC, Inc.</u> (<u>Chevron</u>), 467 U.S. 837 (1984)) .  In <u>Coke</u>, the FLSA claimant, Evelyn Coke, was an employee of Long Island Care at Home, Ltd. (Long Island Care).  <u>Id.</u> at 2345.  Coke "provide[d] 'companionship services' to elderly and infirm men and women."  <u>Id.</u>  The case arose when Coke brought suit against Long Island Care seeking judgment for unpaid wages to which she believed herself entitled pursuant to the FLSA.  <u>Id.</u>  The issue in <u>Coke</u> was whether an FLSA exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves" applied to a home health care worker employed by a third party agency.  <u>Id.</u> at 2344 (quoting 29 U.S.C. § 213(a)(15) (alterations in original)).  The Department of Labor (DOL) regulation interpreting this exemption stated that "exempt companionship workers include those 'who are employed by an employer or agency other than the family or household using their services . . . [whether or not] such an employee [is assigned] to more than one household or family in the same workweek . . . .'"  <u>Id.</u> at 2345 (quoting 40 Fed. Reg. 7,407 (1975) (codified at 29 C.F.R. § 552.109(a) (2006)) (alterations in original)).

14

The United States Court of Appeals for the Second Circuit had held that DOL's regulation was "unenforceable" based upon "its content, its method of promulgation, and its context." Id. at 2346. Because it determined that the FLSA exemption may not apply to home health care workers such as Coke, the Second Circuit set aside the district court's initial dismissal of Coke's suit. Id. at 2344. The Supreme Court "vacated the Second Circuit's decision and remanded the case so that the Circuit could consider a recent DOL 'Advisory Memorandum' explaining (and defending) the regulation." Id. at 2345. However, the Second Circuit again held the regulation to be unenforceable, and the Supreme Court granted certiorari. Id.

After hearing arguments on the merits, the Supreme Court reversed, based upon an application of the standard for deference to agency interpretations of statutes articulated in Chevron. See Coke, 127 S. Ct. at 2345-46. The Court stated, "We have previously pointed out that the 'power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress,'" and that "[w]hen an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g. procedural) requirements, the courts accept the result as legally binding." Id. at 2345-46 (quoting Chevron, 467 U.S. at 843-44 (alteration in original) (citations omitted)). The Court found that Congress explicitly left gaps in its FLSA provisions, and it authorized the "Department of Labor . . . to fill [those] gaps with rules and regulations." Id. at 2346 (citations omitted). Further, the Court found that the "subject matter of the regulation in question concerns a matter in respect to which the agency is expert, and it concerns an interstitial matter . . . , the details of which . . . Congress entrusted the agency to work out." Id. Finally, the Court found that DOL met all procedural requirements in promulgating the regulation because "[i]t gave notice, it proposed regulations, it received public comment, and it issued final regulations in light of that comment." Id.

Coke argued that, notwithstanding the facial adherence of the regulation to the Chevron standard, the regulation should be unenforceable because it "[fell] outside the scope of Congress' delegation; . . . [was] inconsistent with another, legally governing regulation; . . . [was] an 'interpretive' regulation not warranting judicial deference; and . . . was improperly promulgated." Id. The Court rejected each of these arguments in turn and held that, because DOL's third party regulation was within the scope of the statute's delegation, was perfectly reasonable, and otherwise complied with the law, it was legally binding. See Coke, 127 S. Ct. at 2346-52.

Coke dealt specifically with whether or not a certain DOL regulation (not involving commuting time) was valid and enforceable. The court does not perceive how the disposition of Coke has any bearing upon the substantive law of whether or not

15

driving a employer's vehicle between home and work constitutes compensable work under the FLSA and the Portal-to-Portal Act.  Coke is simply not, as plaintiff suggests, a source of substantive change in the "law applicable to 'time worked' under [the] FLSA . . . since Adams [II]."  Pls.' Opp. 2.

      b.      Even if Adams II Did Not Give Chevron Deference to OPM Regulations, This Court Would Still Be Bound by its Precedent

Coke does not require this court to ignore Adams II because the Federal Circuit did not give the proper deference to agency regulations under the Chevron standard.  See Pls.' Opp. 2-4 (concluding "[o]n this basis plaintiffs submit that just as was the case in Coke, this Court is obligated to defer to [Office of Personnel Management (OPM)] regulations, and that on their face these regulations require it to declare plaintiffs' driving compensable under the FLSA.").[8]

First, plaintiffs have not proven that the Adams II court failed to take into account the relevant OPM regulations in adjudicating that case or that – if it had it – would have reached a different conclusion.  In Bobo, the precedent upon which the Adams II court based its decision, the Federal Circuit cited to the very same OPM regulations which Plaintiffs' Opposition argues are controlling in this situation:

---

[8]The Office of Personnel Management (OPM) guidelines that plaintiffs believe should apply are §§ 551.401(a) and 551.422.(a)(2) of Title 5 of the Code of Federal Regulations regarding "Hours of Work."  See Pls.' Opp. 4.  Section 551.401(a) provides:

> All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work."  Such time includes:  (1) Time during which an employee is required to be on duty; (2) Time during which an employee is suffered or permitted to work; and (3) Waiting time or idle time which is under the control of an agency and which is for the benefit of an agency.

5 C.F.R. § 551.401(a) (2008).  Section 551.422(a), entitled "Time spent traveling," provides, "Time spent traveling shall be considered hours of work if:  (1) An employee is required to travel during regular working hours; (2) An employee is required to drive a vehicle or perform other work while traveling . . . ."  5 C.F.R. §§ 551.422(a).  However, plaintiffs do not cite to another, possibly applicable provision, section 551.422(b), which states, "An employee who travels from home before the regular workday begins and returns home at the end of the workday is engaged in normal 'home to work' travel; such travel is not hours of work."  5 C.F.R. § 551.422 (b) (emphasis added).

> The FLSA, <u>as interpreted by [OPM] regulations</u>, requires federal agencies
> to pay employees for "all time spent by an employee performing an activity
> for the benefit of an agency and under the control or direction of the
> agency." 5 C.F.R. § 551.401(a) (1997).  <u>However, the Portal-to-Portal Act,</u>
> <u>which amended the FLSA, creates an exception to this general rule</u> . . . .

<u>Bobo</u>, 136 F.3d at 1467 (emphases added).  The Federal Circuit took note of the
regulations but determined that they were not controlling in the context of compensation
for time spent driving Government vehicles to and from work because of an exception
expressed in the Portal-to-Portal Act.  <u>Id.</u> at 1467-68.  The Portal-to-Portal Act was
amended by the Employee Flexibility in Commuting Act of 1996, <u>Adams I</u>, 65 Fed. Cl. at
224, and now states, in relevant part:

> [N]o employer shall be subject to any liability or punishment under the
> [FLSA] . . . [for] failure . . . to pay an employee minimum wages, or to pay
> an employee overtime compensation, for . . . (1) walking, riding, or
> <u>traveling to and from the actual place of performance of the principal</u>
> <u>activity or activities which such employee is employed to perform</u>, and (2)
> activities which are preliminary to or postliminary to said principal activity
> or activities . . . .  For purposes of this subsection, <u>the use of an employer's</u>
> <u>vehicle for travel by an employee and activities performed by an employee</u>
> <u>which are incidental to the use of such vehicle for commuting shall not be</u>
> <u>considered part of the employee's principal activities if the use of such</u>
> <u>vehicle for travel is within the normal commuting area for the employer's</u>
> <u>business or establishment</u> and the use of the employer's vehicle is subject to
> an agreement on the part of the employer and the employee or
> representative of such employee.

29 U.S.C. § 254(a) (emphases added).  Further, the Court of Federal Claims specifically
discussed and rejected plaintiffs arguments relating to these OPM regulations in <u>Adams I</u>.
<u>Adams I</u>, 65 Fed. Cl. at 239 ("Plaintiffs also allege that a variety of regulations . . .
support compensability of the commuting time claims here.  Plaintiffs' citations to
regulations include 5 C.F.R. §§ 551.401 [and] 551.422 . . . .  However, [neither] of these
regulations is directly on point for the commuting time claims alleged here.").  Because
OPM's regulations relied on by plaintiffs here were examined and rejected by the courts
in both <u>Bobo</u> and <u>Adams I</u>, it is unlikely that the court in <u>Adams II</u> failed to give them the
proper <u>Chevron</u> deference.

Furthermore, even if the Federal Circuit had failed to give OPM regulations the
proper <u>Chevron</u> deference in <u>Adams II</u>, its decision would still be binding upon this court.

Plaintiffs argue that this court should abstain from following the precedent of the Federal Circuit, because, plaintiff alleges, the Federal Circuit was incorrect in its interpretation of the FLSA and Portal-to-Portal Act by not deferring to OPM regulations. Pls.' Opp. 2-4. But this contention is wrong. Coltec, 454 F.3d at 1353 ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, [the Federal Circuit], and . . . the Court of Claims."); Crowley, 398 F.3d at 1335 ("Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court."); Passamaquoddy Tribe, 82 Fed. Cl. at 261-62 ("The United States Court of Appeals for the Federal Circuit has ruled that this court must not engage in a de novo interpretation of statutes . . . ; rather, it should carefully follow the binding precedent in this circuit as to the meaning of . . . relevant statutory terms.").

<blockquote>

c.    National Cable is Distinguishable From This Case and Therefore Does Not Overrule the Controlling Precedent of Adams II

</blockquote>

Plaintiffs also cite to National Cable, 545 U.S. at 967, to support their assertion that Adams II is not binding upon this court in this case. Pls.' Opp. 1, 5-6. Plaintiffs deploy National Cable for the proposition that stare decisis does not trump an administrative agency's interpretation of an ambiguous rule. See id. at 5-6. National Cable involved a dispute regarding the classification of cable companies that sold broadband internet service pursuant to Title II of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (Communications Act), 47 U.S.C. §§ 151-614. National Cable, 545 U.S. at 973-74. The Federal Communications Commission (FCC) independently determined that these companies did not provide a "telecommunications service" as the Communications Act defines the term, see 47 U.S.C. § 153(46), and that they were therefore not subject to certain regulations applicable to providers of that service, National Cable, 545 U.S. at 977-78. The Ninth Circuit Court of Appeals disagreed, holding that the FCC's conclusion was an impermissible construction of the term "telecommunications service" and therefore not legally binding. Id. at 979-980. According to the Supreme Court, the Ninth Circuit "grounded its holding in the stare decisis effect of AT&T Corp. v. Portland (Portland), 216 F.3d 871 (9th Cir. 2000)," "[r]ather than analyzing the permissibility of that construction under the deferential framework of Chevron." Id. at 979. Portland had "held that cable modem service was a 'telecommunications service.'" Id. (quoting Portland, 216 F.3d at 877-880). The Supreme Court reversed the Ninth Circuit's decision, finding that the Chevron provided the appropriate analytical framework and that the Court of Appeals should have applied that framework rather than following the contrary construction it had applied in Portland. Id. at 982 ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds

that its construction follows from unambiguous terms of the statute and thus leaves no room for agency discretion.").

The Portland decision relied on by the Ninth Circuit had been delivered in 2000, while the FCC's contrary regulation was not put into effect until March 2002. See id. at 977, 980. Therefore, by rejecting the FCC's interpretation on the grounds of stare decisis, the Ninth Circuit was, in effect, barring the agency appointed by Congress to enforce legislation from interpreting that legislation in light of its expertise. The Court expressed concern that "[t]he Court of Appeals rule . . . would 'lead to the ossification of large portions of our statutory law' . . . by precluding agencies from revising unwise judicial constructions of ambiguous statutes." Id. at 983 (quoting United States v. Mead Corp., 533 U.S. 218, 247 (2001)). National Cable therefore held that the judicial construction of a statute does not bar subsequent interpretation by an administrative agency unless the judicial construction held that the statute was unambiguous. See id. If an administrative agency authorized by Congress to interpret and enforce legislation arrives at an interpretation of that legislation that is different from an earlier court interpretation, the court cannot automatically strike it down, but must instead analyze the agency's later interpretation under the Chevron framework. See id. at 983-85.[9]

The issues in this case are not the same issues contested in National Cable. This is not a case in which OPM enacted new regulations interpreting the FLSA after the Federal Circuit had decided Bobo and Adams II. The OPM regulations referred to by plaintiffs were enacted in 1980. Pls.' Opp. 9 ("[O]n December 30, 1980, after notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg.[]49[,]580 (July 25, 1980), OPM issued its final FLSA regulations."). The court in Bobo took note of them and chose not to follow them because of the Portal-to-Portal Act exception to the FLSA. See Bobo, 136 F.3d at 1467. Therefore, the Federal Circuit's adherence to the rule of stare decisis in Adams II was not contrary to the Court's holding in National Cable because it did not ignore OPM interpretations of a government regulation made after the Federal Circuit had decided Bobo. Likewise, this court would not be violating the rule of National Cable by following Adams II because plaintiffs do not rely on a new OPM regulation interpreting

_____

[9]The First Circuit case of Dominion Energy Brayton Point, LLC v. Johnson (Dominion Energy), 443 F.3d 12 (1st Cir. 2006), helps to clarify this rule. In Dominion Energy, the First Circuit applied the rule from National Cable & Telecommunications Association v. Brand X Internet Services (National Cable), 545 U.S. 967 (2005), to hold that an Environmental Protection Agency (EPA) regulation promulgated in 2000 must be given Chevron deference and therefore overruled the Circuit's own 1978 interpretation of a statutory jurisdictional requirement needed to bring a citizen's suit. See Dominion Energy, 443 F.3d at 16-17.

19

home-to-work driving under the FLSA issued subsequent to that decision.  Because the issues in National Cable are readily distinguishable from the issues in this case, the court fails to see how the Supreme Court's decision in National Cable could vitiate the binding precedent of Adams II.[10]

        d.      AARP II Does Not Authorize the Court to Disregard Controlling Precedent Set Forth by the Federal Circuit

Plaintiffs argue in Plaintiffs' Memorandum that AARP v. EEOC (AARP II), 390 F. Supp. 2d 437 (E.D. Pa. 2005) "stands for the proposition that where a district court has found that a circuit court's prior judicial interpretation of a rule foreclosed deference to the agency, . . . the court may . . . hold the prior judicial determination to be non-binding . . . and give broad deference to an agency's rule[-]making authority." Pls.' Memo. 13. Defendant counters that plaintiffs' interpretation of AARP II is erroneous, Def.'s Memo. 3-4, and that "[p]laintiffs have failed to demonstrate that the reasoning in AARP [II] supports their challenge to the binding effect of Federal Circuit precedent in this case," id. at 2.

In AARP II, the non-profit organization AARP filed suit against the Equal Employment Opportunity Commission (EEOC), challenging a regulation that "would exempt certain employer practices from the Age Discrimination in Employment Act." AARP II, 390 F. Supp. 2d at 441.  Earlier, the district court had granted summary judgment to the plaintiffs, see AARP v. EEOC (AARP I), 383 F. Supp. 2d 705 (E.D. Pa. 2005), but the EEOC moved for relief from that judgment "as a result of the Supreme Court's recent decision in [National Cable]."  AARP II, 390 F. Supp. 2d at 441.  The district court granted the motion by the EEOC, holding that, although the regulation was contrary to the statute as previously construed by the Third Circuit, the regulation was still valid because the Third Circuit neither held its interpretation of the statute to be the only permissible interpretation nor addressed whether the agency interpretation as embodied in the challenged regulation was a permissible interpretation.  Id. at 448.  The district court came to this conclusion by relying on National Cable, which the district court claimed stood for the proposition "that where a court's holding states merely the 'best'

---

[10]It is also clear that National Cable has not changed the applicable substantive law regarding what is compensable as "time worked"under the FLSA since the time that the Federal Circuit decided Adams II.  Not only was National Cable was decided in 2005, prior to the Federal Circuit's decision in Adams II, compare National Cable, 545 U.S. at 967 with Adams II, 471 F.3d at 1321, but it also deals with provisions of the Telecommunications Act and decisions by the Federal Communications Committee rather than the FLSA or Office of Personnel Management regulations, National Cable, 545 U.S. at 967.

interpretation of a statute, not the 'only permissible' interpretation, the court decision does not foreclose a later, differing agency interpretation." Id. (citing National Cable, 545 U.S. at 983).

Plaintiffs' reliance on AARP II is misplaced.  Plaintiffs do not allege a conflict between the interpretation of the FLSA by the Federal Circuit and the interpretation embodied in the applicable agency regulations.  Rather, plaintiffs disagree with the interpretation of the FLSA as set forth by the Federal Circuit in Adams II.  Plaintiffs appear to be asking the court to defer to plaintiffs' own interpretation of the applicable regulations and to the statutory interpretation that plaintiffs read into those regulations. AARP II does not support plaintiffs' claim that the court may disregard precedent from the Federal Circuit in order to adopt the interpretation of the regulations that plaintiffs favor.

Further, in both AARP II and National Cable, the courts were presented with an action by the relevant agency after the judicial precedent in question had been set.  The underlying question in those cases, therefore, was whether a permissible agency interpretation of a statute trumps a prior judicial interpretation or vice versa.  Neither case addressed the binding effect of decisions by an appellate court regarding statutory interpretation when the appellate court has before it the agency regulation in question. Here, the Federal Circuit has previously examined and ruled on the interpretation of the FLSA with regard to driving time:  time solely spent driving a government vehicle to and from work is not compensable.  Adams II, 471 F.3d at 1325.  Plaintiffs have not presented any precedent, and the court does not know of any, in which a trial court may disregard an interpretation of a statute by the appellate court by whose precedents the trial court is bound.  Even if AARP II could be construed as supporting the view that a trial court may reject the precedent set forth by its appellate court, this court must follow Federal Circuit precedent, not the views of the District Court of Eastern Pennsylvania.

> 5.    The Federal Circuit's Decision in Billings Does Not Obligate This Court to Ignore the Precedent of Adams II and Defer to DOL's FLSA Regulations.

Plaintiffs also argue that the Federal Circuit's decision in Billings v. United States, 322 F.3d 1328 (Fed. Cir. 2003), obligates this court to defer to DOL regulations.  Pls.' Opp. 9-12 ("Plaintiffs submit that consistency with DOL's position requires this [c]ourt to declare plaintiffs' driving FLSA compensable.").  In Billings, employees of the United States Border Patrol challenged OPM's regulation governing an FLSA exemption for "executive" employees on the grounds that it was in conflict with the definition of "executive" under DOL regulations.  Billings, 322 F.3d at 1330.  The Federal Circuit held that, while OPM regulations were required to harmonize with DOL regulations, there

could be differences between the two if the variance was both reasonable and necessary "to accommodate the difference between private and public sector employment." Id. at 1334. The Billings court determined that the differences with respect to the "executive employee exemption" met the relevant criteria and that OPM's regulation was therefore valid. Id. The court does not perceive how the Federal Circuit's decision in Billings could control the outcome of this case. The decision in Billings was based upon the exemption for "executive" employees in OPM regulations, not a regulation related to whether driving to and from work in a government-owned vehicle is compensable under the FLSA. See id. passim.

III.    Conclusion

Plaintiffs have argued that the precedents of Bobo and Adams II are not controlling because this case involves distinguishable facts, because the applicable law has changed, and because the Federal Circuit was incorrect in its FLSA interpretation in Bobo and Adams II. Pls.' Opp. passim. For the foregoing reasons, the court fails to find merit in any of these arguments. Because the facts of this case are substantially identical to those in Adams II, and because there has been no change in the applicable law governing what constitutes "time worked" under the FLSA, this court follows the Federal Circuit precedent as to whether the FLSA requires employees to be compensated for driving between home and work in a government-owned vehicle. See Coltec, 454 F.3d at 1353. Based upon the precedent of Adams II, defendant is entitled to judgment as a matter of law. See Adams II, 471 F.3d at 1328 ("commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimis."). Because there are no genuine issues of material fact in dispute and defendant is entitled to judgment as a matter of law, see Anderson, 477 U.S. at 247, Defendant's Motion is GRANTED and plaintiffs' remaining claims are DISMISSED. The Clerk of the Court shall ENTER JUDGMENT for defendant.


IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge

22